UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-----------------------------------------------X
PAUL T. PAPADAKIS,
Plaintiff,                                :

                                                                       CIVIL ACTION
                                                                       NO: 04-30189-MAP

-vs-

CSX TRANSPORTATION, INC.,
Defendant.                                :

-----------------------------------------------X


**THE PLAINTIFF, PAUL PAPADAKIS'S, MOTION
TO PERMIT SUPPLEMENTAL EXPERT DISCLOSURES**

The plaintiff, Paul T. Papadakis, hereby submits this *Motion to Permit Supplemental Expert Disclosures*. In light of this Court's recent order requiring that defense witness Peter Ebert follow the requirements of Fed. R. Civ. P. 26(a)(2)(B) and submit Expert Disclosures, the Plaintiff asks the Court's permission to supplement its own Expert Disclosures and designate an additional expert, who although previously identified, has not been designated as a trial expert.

The Plaintiff has designated Ernest Gailor as a liability expert this FELA case. A copy of Mr. Gailor's report was received by the Defendant on August 31, 2005. Attached hereto as <u>Exhibit A.</u> The expert report notes the experience of Richard Sanderson and his role in assisting Mr. Gailor with the report. Richard Sanderson is a retired Amtrak/Conrail New York, New Haven/Penn Central work equipment mechanic, with 41 years experience in the field of railroad equipment repair. Mr. Sanderson aided in the preparation of Mr. Gailor's expert report, and defense counsel has received an

independent report conducted by Mr. Sanderson that was incorporated into the written expert report. Mr. Sanderson's role initially was to assist Mr. Gailor, but not to testify as an expert. At the time for disclosure of our expert witness, Mr. Sanderson was considered a resource for trial preparation. Mr. Sanderson has not received any compensation for his services to this point, nor has he ever testified as an expert in a civil trial, therefore there is no record of a fee schedule or expert testimony history. Mr. Sanderson's expertise is derived from his experience as a mechanic, especially in the field of maintaining and installing hy-rail equipment, the type of equipment that is directly at issue in this case.

The Plaintiff did not list Mr. Sanderson as an expert witness as required by Fed. R. Civ. P. 26(a)(2)(A), and now seeks leave of the Court to supplement his expert witness list to include Mr. Sanderson. Initially Mr. Sanderson was going to be a fact witness in this case, however it is now necessary to have a person familiar with the hy-rail equipment testify about its operation. The late designation of Mr. Sanderson as an expert witness is harmless to the Defendant. The Defendant's attorney is aware that Mr. Sanderson aided Ernest Gailor in his expert report, and will not be testifying as to any new theories of liability. Counsel for the Defendant is already in possession of a report that Mr. Sanderson used to formulate his opinion, and his joint report with Mr. Gailor. Furthermore the deadline for taking expert depositions is not until December 30, 2005, and will not be affected by the allowance of this motion. There is no element of unfair surprise to the Defendant in this instance because the discovery period for experts is still open, no trial date has been set, and defense counsel has already read the report that was co-authored by Mr. Sanderson.

## Certificate

I certify that I have in good faith attempted to narrow this issue with opposing counsel.

Respectfully submitted,
Paul T. Papadakis
By his attorney,

Robert M. Byrne Jr.
BBO# 028620
Thornton & Naumes LLP
100 Summer St. 30th Fl.
Boston, MA. 02110
(617)-720-1333

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other by mail/hand on:
10/20/05

**EXHIBIT A**

Case 3:04-cv-30189-KPN   Document 44   Filed 10/20/2005   Page 4 of 9

DEPOSITION EXHIBIT
12 Gailor
10·11·05

# Report of Accident Review
## Paul Papadakis

Prepared for:
**Thorton & Naumes, LLP**
100 Summer Street
30th Floor
Boston, Massachusetts 02110

By:
**Ernest J. Gailor, P.E.**

August 24, 2005

## INTRODUCTION

On the afternoon of June 13, 2001, Paul Papadakis was injured while raising Hi-rail gear at a private crossing in Chester, Massachusetts.

Harlan-McGee was requested to review the circumstances of the accident and to determine if the Hi-rail gear utilized in this operation were defective in a manner that was the cause of the injuries. Ernest J. Gailor, P.E, and Richard Sanderson performed the review.

## INFORMATION AVAILABLE

1. Deposition of Paul Papadakis
2. Deposition of James Santillo
3. Deposition of Peter Ebert
4. Deposition of David J. Evers
5. Fairmont Operator's, Service and Parts Manual
6. <u>Message from D.J. Evers</u> Bulletin
7. Harsco Track Tech Video
8. Richard Sanderson Interview and Consultation
9. Truck Inspection March 15, 2005
10. Maintenance Records

## CONSULTANT

I consulted with Richard Sanderson on this investigation. Mr. Sanderson is a retired Amtrak/Conrail mechanic and equipment manager with a total of 41 years work experience. He has had responsibility to inspect, maintain, repair and install hi-rail gear including the Fairmont model 307 hy-rail gear for highway vehicles. Sanderson's formal training includes reading Fairmont manuals and receiving direct training from Fairmont representatives. He graduated from Eli Whitney Technical School in 1963. He has also completed electrical, hydraulic, welding, mechanic and crane inspection schools. All the schools were sponsored by Amtrak or specifically geared towards the operation, inspection and maintenance of specialized railroad equipment.

## ACCIDENT DETAILS

On the afternoon of June 13, 2001, Papadakis was working for CSX Transportation at a private crossing in Chester, Massachusetts. He was using a truck equipped with Hi-rail gear provided by CSX Transportation to inspect rail road tracks. His duty that day was to inspect the track between mile marker #127 and mile marker #74. As he proceeded to perform his inspection, he aligned his vehicle on the railroad crossing and lowered the

gear to the rail position. This is accomplished by removing the lock pin and then inserting the hand lever into the lower socket, pushing downward to release the pressure on the locking pawl. This releases the mechanical lock and allows the guide wheel to be placed into the lower rail position. He then removed the hand lever and inserted it into the upper socket of the EZ Lift assembly. He then pushed down on the hand lever forcing the guide wheel down until the spring loaded locking mechanism fully engaged, securing the assembly in the rail position. He then inserted the lock pin into place, securing the locking pawl. Papadakis performed this operation for all four wheels.

Upon completion of his inspection, he arrived at Mile Post 74 at approximately 5:00 PM. He positioned his truck over the private crossing at this location and attempted to disengage the Hi-rail gear. He used the incorrect bar that was provided to him to lift the gear up off the tracks and back into the locked position. This is required to be done if the truck is to travel on streets and highways. He first raised the rear Hi-rail gear and then walked to the front of the truck to raise the front gear. He removed the safety pin as required. He properly engaged the mechanism in the top socket with the bar to lift the driver's side front gear. As he pushed forward on the bar releasing pressure on the locking pall, he properly pushed forward the red knob of the locking pall, disengaging it. He then turned the bar around to use the single bend and placed it into the lower socket which allowed the Hi-rail wheel to swing into the up and locked position. While pushing the bar downward in the normal and proper means, the Hi-rail wheel raised up towards the locked position but the locking pall did not engage.

After another attempt, Papadakis retrieved a lining bar, a 4 inch block of wood and a chain from the back of his truck. He placed the chain on the ground and held the block of wood in his right hand. He took the lining bar and placed it under a section of the hi-rail gear and pushed forward to raise up the wheel up to its normal position. He raised the wheel high enough to place the block of wood under it. As he bent forward to place the block of wood between the surface of the crossing and the wheel, he twisted his back and was severely injured.

*ANALYSIS*

<u>Vehicle Analysis</u>

The vehicle and hi-rail gear was inspected and assessed. The gear had been serviced and was in proper working order during this inspection. The vehicle information is as follows:

    Hi-rail Gear ID#:        902898-6
    Fairmont EZ Lift Modification Installed
    Specified EZ Lift Operator's Hand Lever Missing
    Vehicle:                GMC 2500 Truck
    License Plate:        Massachusetts G55 124

The correct hand lever was not available to Papadakis when he engaged the hi-rail gear.

It is clear from the accident description that, for this type of mechanical failure to occur, the hi-rail gear was improperly adjusted and maintained. It would have been nearly impossible for Papadakis to discover this from his normal cursory inspection.

The use of the incorrect hand lever allowed Papadakis to go over center with the pivot arm when he engaged the hi-rail gear into the rail position. When he attempted to raise the guide wheel at the end of his inspection he experienced free movement of the upper socket when he pushed down to release the wheel. He pushed the locking lever forward and moved the hand level down to the lower socket. When he pushed down to raise the guide wheel to the highway position, he could not lock it into position because the pivot arm was over center. He would have to raise the wheel by other means and chain it to the frame in the upper position for highway travel.

There are safety features of the hi-rail gear that are built into this unit to prevent it from going over center or over cam. The correct lever, as identified in the hi-rail gear literature has bends in it which cause the lever to hit the frame or the ground before allowing the gear to over cam. Additionally, a stop arm is attached to the upper socket. When maintained and properly adjusted, it provides a second level of protection in that it does not allow over camming to occur. The mounting height of the guide wheels must be within operational limits. If it is too high, it allows over camming to occur.

The vehicle did not have an operational manual in the vehicle for Papadakis to consult at the time of this accident. There are no service or maintenance records available to review for the time period both prior to and after the accident. Indeed, the maintenance records fail to show the inspection or repair completed after the accident. This is in direct violation of the requirements of the Federal Railroad Administration, 49CFR 214.523. These records must be maintained and made available by CSX as per part 212 of the same regulation. Lack of proper record keeping by CSX creates a hazardous condition for the operators of hi-rail gear. It would be impossible for an operator to be aware of problems or maintenance issues with his equipment. It is also impossible for the maintenance crew to track a recurring condition on a piece of equipment such as the hi-rail gear involved with this accident.

29 CFR 1926.5(a) (1) is the section of OSHA dealing with safe workplaces. Employers must furnish employment and a place of employment that is free from recognized hazards that cause or are likely to cause injury. Injury from a poorly adjusted hi-rail gear would be foreseeable. Subsequent injury is predictable.

CSX Transportation, Inc. improperly maintained the hi-rail gear. By offering an unsafe vehicle, they created a safety hazard for anyone working with the truck and hi-rail gear. They failed to provide the safe place of employment.

*FINDINGS*

Within the bounds of reasonable engineering certainty and subject to change if additional information becomes available, it is my professional opinion that:

1. The failure of CSX Transportation to properly inspect, maintain and repair the hi-rail gear on the truck used by Papadakis created a hazardous condition for workman. The failure of CSX Transportation, Inc. to provide safe hi-rail gear was a dangerous oversight that was the cause of Papadakis' accident and injury.

2. CSX Transportation failed to provide the correct hi-gear hand lever needed for Papadakis' safe operation of the hi-rail gear. The failure of CSX Transportation, Inc. to provide the proper hand lever for the hi-rail gear was a dangerous oversight that was the cause of Papadakis' accident and injury.

Respectfully Submitted,

Ernest J. Gailor, P.E.

Richard Sanderson