UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------X
PAUL T. PAPADAKIS,
Plaintiff,

                                     CIVIL ACTION
                                     NO: 04-30189-MAP

   -vs-

CSX TRANSPORTATION, INC.,
Defendant.

-------------------------------------------------X

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER
<u>REGARDING SURVEILLANCE REPORTS</u>**

NOW COMES, the Plaintiff, Paul Papadakis in his opposition to the Defendant, CSX Transportation Inc. ("CSX") Motion for Protective Order Regarding Surveillance Reports. As grounds therefore the Plaintiff states the following:

### I. <u>FACTUAL BACKGROUND</u>

This is a Federal Employers' Liability Act 45 USC § 51 et seq. The Plaintiff claims an entitlement to compensatory damages for injuries sustained by him on June 13, 2001. The Plaintiff says that on that date he experienced a mechanical problem with the hy-rail gear of this company-provided pickup truck. While in the process of securing one of the guide wheels, he sustained an injury to his back that has precluded him from returning to work.

The Plaintiff first served the Defendant with a Rule 34 request for document production on October 15, 2004. Request No. 25 stated:

> Copies of any and all records, reports, memorandum, notes, statements, correspondence, photographs, drawings, diagrams, tape recordings or transcripts, video tape recordings and all other documents or things in the defendant's possession concerning surveillance of the plaintiff which may have taken place during the period

between June 13, 2001 through the present by any agents, servants, employees, or contractors engaged by the defendant. Attached hereto as <u>Exhibit A</u>.

The Defendant objected to the production request on the grounds that it was overly broad, and vague, and it was protected by discovery by attorney/client privilege and work product. The Plaintiff also served the defendant with interrogatories on the same day. Interrogatory No. 9 requested:

> If the defendant has arranged for surveillance of the plaintiff from and after September 30, 1999 please provide:
> (a) Names, addresses and relationship with the defendant of the persons who conducted this interview;
> (b) The dates of surveillance;
> (c) A description of any report provided the defendant concerning surveillance of the plaintiff. Attached hereto as <u>Exhibit B</u>.

The Defendant also objected to the interrogatory on the same grounds. Recently the Defendant has indicated to the Plaintiff that it has surveillance reports and has subsequently filed a motion for a protective order of such documents. The Plaintiff hereby requests that the Court deny the motion, as well as compel the Defendant to produce the surveillance reports because the reports are substantive evidence of the Plaintiff's injuries, continuing disability, and damages.

## II. <u>DISCUSSION OF LAW</u>

### A. <u>The Defendant's Surveillance Reports are Both Substantive and Impeachment Evidence and Subject to Pre-Trial Discovery</u>

In this personal injury action the surveillance reports are both substantive and impeachment evidence. The defendant characterizes the surveillance evidence solely as "impeachment evidence." However, the very case cited by the Defendant in their argument, plainly states that a surveillance videotape of employee's daily activities was substantive evidence and thus had to be disclosed pursuant to a discovery request. <u>Chiasson v. Zapata</u>

Gulf Marine Corp., 988 F.2d 513 (5th Cir.1993). Admittedly the Plaintiff's credibility would be diminished by surveillance evidence showing him doing that which he claims he cannot do. However one cannot ignore, that such surveillance evidence is also substantive because it bears upon the nature and extent of the Plaintiff's injury, continuing disability and damages. See Boldt v. Sanders, 261 Minn. 160, 111 N.W.2d 225 (1961); Snead v. American Export Isbrandtsen Lines, Inc., 59 F.R.D. 148 (E.D.Pa. 1973); Zimmerman v. Superior Court of Arizona, 98 Ariz. 85, 402 P.2d 212 (1965); Shields v. Burlington Northern and Santa Fe Railway Company, No. Civ.A.03-2506, 2004 WL 2375678, (Ill.App. 1 Dist. Oct. 22, 2004); Wegner v. Cliff Viessman Inc., 153 F.R.D. 154, 159 (N.D. Iowa 1994). (The courts finds that the weight of authority favors discoverability of surveillance information principally because such information is probative of a critical issue in a personal injury case; the physical condition of the plaintiff).

The distinction between substantive and impeachment evidence has been rejected because it presumes that investigators always tell the truth, and personal injury plaintiffs always lie, a presumption that the Defendant assumes in its motion for a protective order. This is a disconcerting proposition to anyone who has explored at deposition the economic incentives behind some investigator's surveillance activities, the lack of their knowledge about the signs and symptoms of the plaintiff's illness, and their own employment and educational backgrounds, or lack thereof.

In addition to the Chiasson Court, the Arizona Supreme Court has also ruled that surveillance films are both substantive evidence and impeachment evidence, and therefore discoverable. In Zimmerman, the Court rejected the defendant's argument that the impeachment value of surveillance films would be lost if the defense were forced to

disclose them. The defendant made the claim that the plaintiff would change her story to circumvent the impeachment evidence. This presumption is wrong for two reasons. In the case at bar Mr. Papadakis has already been deposed by the Defendant, thereby preserving any impeachment value that the surveillance may, or may not have. Exhibit C. Secondly the evidence also has important substantive value. Citing Boldt v. Sanders, the Arizona court noted that inherent in the defendant's argument was the erroneous presumption that only its impeachment evidence was truthful:

> "Defendant's entire argument proceeds on the premise that defendant's evidence which plaintiffs seek to elicit constitutes the unblemished truth which if prematurely disclosed, will prevent the defendant from revealing the sham and perjury inherent in the plaintiff's claims. While defendant disclaims such assumption, it is implicit in his position that witnesses whose testimony is designed to impeach invariably have a monopoly on virtue and that evidence to which the attempted impeachment is direct is, without exception fraudulent."

The need to authenticate and review this "surveillance" evidence is heightened in this case. The Defendant in his argument states that the investigator made only written notes of the Plaintiff. The Plaintiff needs to depose this investigator in order to determine the veracity, if any, of these written reports. The Defendant in this case claims that unless the Plaintiff "perjures" himself, that they will not introduce these surveillance reports at trial. The United States District Court of New York has ruled that an employee was entitled to production of surveillance tapes whether or not the employer intended to introduce them at trial. Daniels v. National Railroad Passenger Corp., 110 F.R.D. 160, 161 (S.D.N.Y 1986). The Court's ruling was based on the need for the plaintiff to review the tapes for authenticity and prepare effectively for trial. Also the Court noted that review of the tapes may also encourage settlement of the suit, a legitimate function of pre-trial discovery. Id.; See Martin v. Long Island Railroad Co., 63

F.R.D. 53, 54-55 (E.D.N.Y. 1974). The Daniels Court noted the need of the defendant to take the deposition of the plaintiff prior to disclosure, an event that has already occurred in the case at bar. Other courts also recognize that a plaintiff should have access to surveillance evidence once they have been deposed. Blyther v. Northern Lines, Inc., 61 F.R.D. 610 (E.D.Pa. 1973); Ward v. CSX Transportation Inc., 161 F.R.D. 38 (E.D.N.C. 1995).

The only case cited by CSX that denied access to surveillance reports, Denty v. CSX Transportation, 168 F.R.D. 549 (E.D.N.C. 1996), is clearly in the minority in the Federal Courts, and the opinion offers no analysis of the issue of pre-trial surveillance. In Ward, the same court ruled that discovery of surveillance materials was allowed after the plaintiff was deposed, but before trial, meets the end of justice, and the spirit of the discovery rules, even though the surveillance was only to be used for impeachment. In fact, the issue of surveillance had been considered at least three times before the Ward and Denty decisions in that very district, and all of those rulings were that surveillance materials were discoverable after an opportunity to depose the subject of the surveillance, a fact the Defendant conveniently omitted from their argument. See Blount v. Wake Electric Membership Corporation, Et Al., 162 F.R.D. 102 (E.D.N.C. 1993); Ford v. CSX Transportation Inc., 162 F.R.D. 108 (E.D.N.C. 1995); Smith v. CSX Transportation Inc., No.C.A. 93-373 1994 WL 762208 (May 18, 1994).

The surveillance evidence should be given no more initial credibility than any other evidence. It should be treated as substantive evidence and subject to meaningful pre-trial scrutiny, and not subject to the exception to the Rule 26 discovery requirements.

**B. The Surveillance Report as Work Product**

The Defendant argues that the work product privilege shields disclosure of the surveillance. This position must be evaluated in the context of the general discovery provisions of Fed.R.Civ.P. 26(b)(1) which provides:

> Parties may obtain discovery regarding any matter not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter in the action. Relevant information need not be admissible at trial if discovery appears to be reasonably calculated to the discovery of admissible evidence.

The activities and notes of the investigator are certainly relevant to the nature and extent of the Plaintiff's injury and disability. Discovery as to the circumstances and magnitude of the surveillance, i.e. where the Plaintiff was observed, the dates of the assignment, and the actual time spent at surveillance, those sessions that were fruitless, as well as those that were successful are all reasonably calculated to lead to the discovery of admissible evidence. Therefore barring an applicable privilege, a plaintiff who has been subject to surveillance is entitled to both the substance of any anticipated surveillance testimony as well as any tangible product of the investigation.

The Defendant makes the claim that the surveillance tapes are work product that was prepared in the anticipation of litigation. The Plaintiff does not dispute this issue. The initial burden of demonstrating that the requested materials are work product is on the party claiming the privilege. City Consumer Services Inc. v. Horne, 100 F.R.D. 740 (D.Utah 1983). Immunity from discovery afforded work product under Fed.R.Civ.P. 26(b)(3) can be separated into two types of immunity one which is absolutely immune from discovery, and one which is only qualifiedly immune from

discovery. National Fire Ins. V. Murray Sheet Metal, 967 F.2d 980, 983 (4th Cir. 1992). Mental impressions, conclusions, opinions, and legal theories concerning litigation are absolutely protected from discovery, while other forms of work product are discoverable upon a showing of substantial need. Id. Even work product materials are discoverable if the plaintiff has "a substantial need of the materials in the preparation of his case and he is unable without undue hardship to obtain the substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). Surveillance materials are only entitled to qualified immunity since there are no mental impressions, conclusions, or opinions of the attorney. Ward 161 F.R.D. at 40. The Ward Court recognized a special need for production of surveillance materials that cannot be satisfied by other means.

There are no mental impressions, conclusions, or opinions of Attorney Flynn in the surveillance conducted by the Defendant in the case at bar. Therefore the surveillance tapes are only entitled to qualified immunity. The Plaintiff in this case has a substantial need for the discovery of the surveillance evidence. This evidence cannot be duplicated by the Plaintiff, nor can it be authenticated. Surveillance by its very nature fixes information available at a particular time, and place under particular circumstances and therefore cannot be duplicated. Wegner 153 F.R.D. at 159. The 1st Circuit has condemned trial by ambush tactics in Licciardi v. TIG Ins. Group, 140 F.3d 357 (1st Cir. 1998). The Plaintiff needs to review and authenticate the surveillance evidence and has a substantial need that overcomes any work product privilege that the Defendant raises. It would be impossible for the Plaintiff to reproduce this evidence, and therefore the Plaintiff has made its showing that the evidence should be disclosed.

### III. CONCLUSION

The potential, irreparable damages which can be done unfairly to a Plaintiff's case by presentation for the first time of surveillance evidence at trial creates a substantial need for the Plaintiff to discover such materials. Since the Plaintiff cannot produce this material by other means, or verify the accuracy and integrity of such materials if they are not produced before trial, the Defendant's claim that the surveillance is solely impeachment evidence and that the work product doctrine applies should be denied. Despite the Defendant's claim that the surveillance evidence will not be used for any purpose of than impeachment, the substantive nature of the surveillance evidence cannot be ignored, therefore the Plaintiff respectfully requests that this Honorable Court DENY the Defendant's Motion for Protective Order, and order the Defendant to produce the surveillance notes.

Dated: December 8, 2005.

Respectfully submitted,
Paul T. Papadakis
By his attorney,

Robert M. Byrne Jr.
BBO# 028620
Thornton & Naumes LLP
100 Summer St. 30th Fl.
Boston, MA. 02110
(617)-720-1333

Certificate of Service

I hereby certify that on December 8, 2005, I served the foregoing Plaintiff's Opposition to Motion for Protective Order Regarding Surveillance by mailing a copy of same, postage prepaid, to:

Michael B. Flynn, Esq
Flynn & Associates
400 Crown Colony Drive, Suite 200
Quincy, MA 02169

_____
Robert M. Byrne, Jr., Esq.