UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

PAUL T. PAPADAKIS,
                Plaintiff,

v.

CSX TRANSPORTATION, INC.,
                Defendant.

C.A. No.: 04-30189-MAP

## JOINT PRE-TRIAL MEMORANDUM

The parties hereby submit, pursuant to the *Notice to Appear for Final Pre-Trial Conference*, their *Joint Pre-Trial Conference Memorandum*, as follows:

**I.    CONCISE SUMMARY OF EVIDENCE**

    **A.    Plaintiff:**

        **a.  Liability:**

Paul Papadakis lives with his wife, Kathleen, in Feeding Hills, Massachusetts.  On June 13, 2001, he was employed by CSX Transportation, Inc. as an inspect and repair foreman.  His duties in that position included inspecting track owned by CSX in Warren, Massachusetts. In order to perform this assigned duty, he was provided with a CSX pickup truck.  The truck was equipped with so-called hy-rail gear.  The gear was manually operated. It consisted of four small wheels situated at the corners of the vehicle. The truck would be positioned by the operator on the railroad track.  The hy-rail wheels were then manually lowered to the rail permitting the truck to operate on the track.  At the conclusion of his inspection, Mr. Papadakis would manually retract the wheels in a stored position and return to his base.  The incident giving rise to this claim occurred at approximately 5:00 p.m. at the end of his inspection of the track in Warren,

Massachusetts.  Unbeknownst to Mr. Papadakis, the levering bar that was provided to him with the truck in order to lower and retract the hy-rail wheels was of the wrong bend configuration. This incorrectly configured bar allowed him to inadvertently overexert on the component parts of the front driver side hy-rail gear.  The internal component part of the gear over-rotated when hi initially locked it into the down position.  Later that afternoon when he attempted to retract the wheel in the stored position, the gear refused to lock in the stored position. Consequently, it was necessary for Mr. Papadakis to use a climbing bar to level the wheel in a retracted or stored position and then secure the wheel with a chain.  It was in the process of performing this emergency repair that Mr. Papadakis felt an onset of acute low back pain.  Despite his pain, he was able to secure the wheel with the chain and return to his base where he reported the incident to his superiors.  The following day the vehicle was inspected by various CSX employees at the company's facilities in Springfield, and later transported to a repair facility in Selkirk, New York.  This facility, TNT Repair, Inc., was owned by Peter Ebert.  TNT regularly performed periodic maintenance, inspections and repairs of CSX hy-rail equipment.  During the course of an inspection performed by Mr. Ebert, the incorrect bar was discovered and removed from the vehicle.  CSX subsequently issued a directive that all bars of the type used by Mr. Papadakis at the time of this incident be removed from its hy-rail vehicles and replaced with a properly configured bar.

Mr. Papadakis's initial medical care for his injuries was at the office of his primary care physician, Franklyn Carrington, M.D.  Dr. Carrington diagnosed Mr. Papadakis as suffering from a low back strain and referred him to Lawrence H. Field, a board certified physiatrist. Dr. Field ordered an MRI and diagnosed the condition as a torn L4, L5 disc with myoligamentous lumbro-sacral strain and L4 nerve root compression.  Mr. Papadakis thereafter underwent a long course

of physical therapy as well as epidural cortisone injections with no significant relief.  He has been referred to a number of specialists including orthopedic as well as neurosurgeons for relief from his back pain.  He has also been treated at the pain management center at Baystate Medical Center by Dr. Issam Khayata, M.D., who administered the lumber epidural injection therapies.  Notwithstanding these treatments, Mr. Papadakis continues to suffer from debilitating back pain, which severely limits his ability to left, squat, reach, and perform the other duties required of an I&R foreman.

At the time of the incident, Mr. Papadakis was 53 years of age.  As an I&R foreman, he earned $20.06 per hour and was entitled to various fringe benefits, including medical insurance, and pension contributions.  He has been evaluated by Leona Liberty, PhD., a vocational rehabilitation specialist, who has determined that Mr. Papadakis's post-injury earning potential ranges from $6.00 - $9.00 per hour for a work week of 25-30 hours.  However, since Mr. Papadakis has few transferable skills, the likelihood of actually obtaining employment is problematic.

Anthony Riccardi of AHR Associates, is an economist.  Mr. Riccardi has evaluated Mr. Papadakis's past earnings history as well as the value of his health insurance and pension plans.  Mr. Riccardi has also evaluated the tax treatment of his income.  In light of the information available to him, Mr. Riccardi has opined that the total value of Mr. Papadakis's lost earning capacity is $669,026.00, which when reduced to present value amounts to $562,338.00.  The value of his loss to retirement and disability benefits is $94,384.00, when reduced to present value is $44,684.00.

According to the anticipated testimony of Richard Sanderson, who during his forty-year career as a railroad mechanic, installed, repaired, inspected and maintained hundreds of hy-rail

3

gear equipment, the over-rotation of the subject h-rail gear on June 13, 2001 was attributable to Mr. Papadakis's use of the incorrect hy-rail levering bar. And that the use of this bar resulted in an over-rotation and an inability of the hy-rail gear to lock in the stored or up position.

### b. Damages:

As a result of these injuries, Mr. Papadakis has suffered significant pain and emotional suffering attributable to long-term chronic pain, as well as the loss of his career and the uncertainties of his future physical condition.

### B.   Defendant:

### a.  Liability:

The plaintiff, a track inspector for CSX, alleges that he was injured on June 13, 2001, as he attempted to raise a hi-rail truck wheel in order to drive the hi-rail truck off of the railroad tracks and onto the roadway. Hi-rail trucks operate on railroad tracks and roadways. The hi-rail equipment consists of steel or rubber-coated railroad "pilot" wheels, which can be lowered down onto the tracks when the vehicle is to be operated on the tracks, and a manually operated mechanism for raising and lowering the pilot wheels. In order for a hi-rail truck to operate over the railroad tracks the hi-rail wheels must be locked down over the rails. In order for the truck to operate over the roadway the hy-rail wheels must be stored in an upward position. Raising and lowering the wheels is accomplished by manually raising or lowering the hi-rail gear which is done by using a hand lever bar as a fulcrum.

It is the defendant's position that the operation of the hi-rail mechanism did not occur as the plaintiff alleged, and the plaintiff fabricated his story in an attempt to establish liability. The defendant expects to prove that there is no liability which will attach to the defendant. The plaintiff said that when he operated the device, it would not go up into the highway position. All

4

the reputable and qualified testimony, including the testimony of Peter Ebert, as well as the admission of the plaintiff's then-expert, Ernest Gailor, all establish that the way the plaintiff said the accident happened is simply impossible, which is also supported by the physical evidence. Plaintiff has stated in this case that he chained the wheel up as close as he could get it to the highway position. However, when he returned the vehicle to CSX following the incident, the wheel was actually in the opposite position. The defendant expects to establish that this could only happened by the plaintiff's derailing the vehicle, and/or his improper operation of the hi-rail device.

The plaintiff also contends that the hi-rail device had not been maintained properly because a stop mechanism was not properly adjusted. However, the stop mechanism tolerance was actually measured by Mr. Ebert following the incident and was demonstrated to be within the prescribed factory tolerances.

Regardless of whether the stop mechanism was within the factory tolerance, the plaintiff, who was in control of the vehicle from the time that CSX purchased it until the day of his accident, was responsible for this condition. Moreover, the defendant expects to prove that it was the plaintiff's improper operation of the hi-rail device at the time of his accident that caused it to be pushed past the point that the stopping mechanism was intended to bring to the operators attention. The defendant also expects to prove that the stopping mechanism was not designed to prevent the device from being operated to a point past which the stopping mechanism is activated. Instead, this only provides notice to the operator that they have reached the allowable tolerance of the device and that they should go no further. This is communicated to the operator, visually, audibly and by touch. When operating the device, the operator pushes down on the hand bar until he sees, hears and feels it come up against the stopping mechanism. Proper

operation dictates that the operator is not to push the bar any further.  The defendant expects to prove, that although the plaintiff experienced all these sensory warnings, he pushed the bar past this point and caused the mechanism to malfunction.  The defendants expect to prove that these facts demonstrate that not only were they not negligent, but that the accident was caused solely and completely by the plaintiff's own negligence.  The defendant also expects to prove that as the sole possessor of the vehicle, the plaintiff had consistently and repeatedly operated the device in this manner as evidenced by marks on the stopping mechanism.

On the issue of maintenance, the defendant expects to elicit testimony that once the condition created by the plaintiff was corrected, the device was within all prescribed tolerances and was working properly and as intended.

Finally, on the issue of liability, the defendant expects to demonstrate that the plaintiff's own conduct was a superseding intervening cause which broke the chain of causal connection between any malfunction of the device and his alleged back injury.  Once the plaintiff found himself in a position where he was unable to remove the hi-rail device from the railroad tracks, it was standard CSX protocol for him to call a mechanic to come out and remedy the situation.  He failed to do so.  There was also an approved method for removing a hi-rail wheel from a track by the driver onto a wooden block, which the plaintiff did have in his vehicle as a piece of standard track inspection equipment, and put the wheel in the up/highway position from this point.  The plaintiff failed to do so.  Instead the plaintiff, exercising another lapse of concern for his own safety, and in a clearly negligent manner, decided to attempt to jack the vehicle up with a makeshift fulcrum and lever.  It was during this activity, not anything that occurred during the operation of the hi-rail device, that he allegedly strained his back.  It was his negligence in choosing this manner of repair, not the alleged malfunction of the hi-rail device that caused his

alleged back injury.

**Damages:**

The defendant states that the plaintiff was not injured as a result of the alleged incident. If the plaintiff suffered any injuries, it was a soft-tissue strain, which should have resolved itself in no more than three months. The defendant intends to elicit evidence that that the plaintiff suffered from prior back problems, which are the true cause of any injuries the plaintiff claims. The defendant's experts will opine that the annular tear that the plaintiff claims he suffered from would not have been caused by the accident, and is no longer present. The plaintiff has degenerative conditions that pre-existed the accident, and any pain he currently suffers from is in no way related to the accident, but solely due to the pre-existing conditions.

Under applicable law, the jury must at least consider apportionment of damages due to his preexisting condition and injuries. It is the defendant's position that the plaintiff is neither injured nor is he disabled, and that he is essentially fabricating his symptomology and is a malingerer. The plaintiff should have returned to work no more than three months after the date of the accident and has been, since that time, fully capable of performing his job. The defendant expects to elicit testimony from the plaintiff's own treating physicians, including Dr.'s Carrington and Field, in addition to the defendant's expert, Dr. Feldmann.

II.    **THE FACTS ESTABLISHED BY THE PLEADINGS OR BY STIPULATION OR ADMISSIONS OF COUNSEL**

This action has been brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. 51, *et. seq.* CSX is a railroad within the meaning of that statute. On June 13, 2001, the plaintiff was 53 years of age, and belonged to the Brotherhood of Maintenance of Way Employees labor

union.  At the time and place alleged, the plaintiff was employed by CSX as an I&R Foreman and the plaintiff was engaged in his duties as an I&R Foreman; and together the parties were involved in interstate commerce.  The plaintiff's duties in that position included inspecting track owned by CSX in Warren, MA.  In order to perform this assigned duty, the plaintiff was provided with a CSX pickup truck.  The vehicle involved in the events of June 13, 2001, was owned or otherwise controlled by CSX.  The hy-rail equipment on truck #TC 500285 on involved in the events on June 13, 2001, was manufactured by Fairmont Railway Motors, a Division of Harsco Corporation.  That vehicle was equipped with *Fairmount Series 0307 Hy-Rail Pilot Unit with Easy Lift*.  On June 13, 2001 the hy-rail gear at the left front corner on truck #TC 500285 had a pivot stop arm assembly.

At the conclusion of his inspection, the plaintiff would manually retract the hy-rail wheels in a stored position and return to his base.  The plaintiff was at a road crossing in Warren, MA at approximately 5 p.m. on June 13, 2001, when the events relating to this suit occurred.  The plaintiff, at the time and place alleged, was attempting to remove the truck from the railroad tracks.

## III.    CONTESTED ISSUE OF FACT

    a.    Malfunction or Design Defect in the Subject Hy-rail Gear;

    b.    Negligence/Contributory Negligence of the Plaintiff at the Time of the Incident;

    c.    Causation;

    d.    Damages.

## IV.    JURISDICTIONAL QUESTIONS:

    None.

## V.     QUESTIONS RAISED BY PENDING MOTIONS

The defendant expects to file the following motions in limine: *Motion to Exclude Evidence of Subsequent Remedial Measures; Motion to Exclude Expert; Motion to Admit Collateral Source Benefit Evidence on Issue of Credibility; Motion To Admit Evidence Concerning Apportioning the Damages*; and *Motion to Exclude Any Evidence that Stop Mechanism was Out of Tolerance*.  The defendant also reserves the right to brief the issue of intervening superseding cause, either as a motion for judgment or otherwise if directed by the court.

## VI.     ISSUES OF LAW INCLUDING EVIDENTIARY QUESTIONS TOGETHER WITH SUPPORTING AUTHORITY

### 1.     Plaintiff's Statement of the Law:

#### A.  Liability

The Federal Employers' Liability Act, 45 U.S.C.A., Section 51, et seq., provides in part:

> "Every common carrier by railroad while engaged in commerce between any of the several states....shall be liable in damages to any person injured while he is employed by such carrier in such commerce...for such injury or death resulting from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, or other machinery."

Generally, the statute has been determined to obligate the employer to provide the employee with a safe place to work, Bailey v. Central Vermont Ry. Co., 319 U.S. 350, Isgett v. Seaboard, 332 F. Supp. 1127.  This duty has been interpreted to require the employer to conduct an inspection of the

9

work area for hazards and to take such precautions as necessary to protect the employee from injury, Nivens v. St. Louis Southwester Ry. Co., 425 F.2d 114. Reasonable precautions must be taken even if the condition is obvious, Cazad v. Chesapeake & Ohio Ry., Co., 622 F.2d 72. Actual notice of an unsafe condition is unnecessary under the act.

### B.  Causation:

The traditional common law concept of "proximate cause" has no place in a FELA action. Page v. St. Louis Southwestern Railroad Co., 349 U.S. 820, Peymann v. Perini Corp., 507 F.2d 1318. The proper test of causation in cases such as this is whether the injury or damage can be said to have been caused or contributed to by an act or failure to act when it appears from the preponderance of the evidence in the case that the act or omission played any part, not matter how small, in bringing about or actually causing the injury or damage. So if the jury should find from the evidence in the case that any negligence of the defendant contributed in any way toward any injury or damage suffered by the Plaintiff, then the jury is entitled to find that such injury or damage was caused by the Defendant's act or omissions. Rogers v. Missouri Pacific Ry. Co., 352 U.S. 500, 77 S.Ct. 443, Isgett v. Seaboard Coast Line Rr, 332 F. Supp. 1127, Tyree v. New York Central Railroad Co., 382 F.2d 524.

Moreover, this test is applicable despite what might be arguably called unexpected or severe consequences of the negligent act or omission. Gallick v. Baltimore & Ohio RR Co., 372 U.S. 108, 83 S.Ct. 659.

### C.  Damages:

As elements of damages, the Plaintiff claims physical pain and suffering, both past and future, Chesapeake & Ohio RR Co. v. Carnahan, 241 U.S. 241, 60 LEd 979, 36 S.Ct. 594, emotional pain and suffering, both past and future, Flanigan v. Burlington Northern, 632 F.2d 880, Erie R. Co. v. Collins, 253 U.S. 77, 40 S.Ct. 450, earnings lost since the incident and future lost earnings. See Moore v. Chesapeake & Ohio Ry. Co., 649 F.2d 1004 and Isgett v. Seaboard Coast Line, 332 F. Supp. 1127.

The Defendant may offer evidence concerning the Plaintiff receipt of benefits received from the United States Railroad Retirement Board and/or insurers who have paid sickness and/or disability benefits to the Plaintiff. The Plaintiff acknowledges that the U.S. Railroad Retirement benefits constitute a statutory lien. However, the Plaintiff says that evidence that such benefits were received by the Plaintiff is evidence of a collateral service and inadmissible, Eichel v. NYCRR 375 U.S. 253, 84 S Ct. 316.

## D.      Plaintiff's Other Evidentiary Issues:

It is anticipated that the Plaintiff will offer into evidence, a CSX bulletin issued by the Defendant's engineering department concerning use of the incorrect bar by the Plaintiff.  The Defendant has indicated its position that the document constitutes a subsequent remedial measure within the meaning of FRE 407.  The Plaintiff takes the position that the document is not a subsequent remedial measure within the meaning of the rule and even if it were, it is admissible for other purposes, Stevens v. Bangor & Aroostook Railroad, 97 Fed. 3d 594.

The Plaintiff suggests that the Defendant may offer evidence concerning the Plaintiff receipt of benefits received from the United States Railroad Retirement Board and/or insurers who have paid sickness and/or disability benefits to the Plaintiff. The Plaintiff acknowledges that the U.S. Railroad Retirement benefits constitute a statutory lien. However, the Plaintiff says that evidence that such benefits were received by the Plaintiff is evidence of a collateral service and inadmissible, Eichel v. NYCRR 375 U.S. 253, 84 S Ct. 316.

2.    <u>**Defendant's Statement of the Law**</u>:

i.    <u>**FELA Liability**</u>:

The defendant expects to prove that it provided the plaintiff with a "reasonably safe workplace" and thus did not violate the provisions of the Federal Employers' Liability Act, 45 U.S.C. 51, et seq. ("FELA"). Moreover, the defendant states that any such accident was due solely to the plaintiff's own negligence. Consequently, the defendant maintains that the plaintiff will be unable to meet his burden in proving each and every element of his FELA case.

In order to recover under FELA, the plaintiff must prove that the railroad was negligent. <u>Tennant v. Peoria and Pekin Union Ry. Co.</u>, 321 U.S. 29 (1944). A plaintiff's prima facie case under the FELA must include all the same elements as are found in a common law negligence action including the element of foreseeability. <u>Davis v. Burlington Northern, Inc.</u>, 541 F.2d 182 (8th Cir. 1976) cert. denied, 429 U.S. 1002 (1976); <u>Robert v. Consolidated Rail Corp.</u>, 832 F.2d 3 (1st Cir. 1987). The plaintiff must prove each of these elements by a fair preponderance of the evidence. <u>Id</u>. at 6. A FELA defendant is not required to provide a perfect or absolutely safe workplace; rather its duty is to provide only a reasonably safe place to work. <u>Id</u>. "Although the burden on a FELA plaintiff is not onerous, neither is it nonexistent, the plaintiff must present probative facts from which the negligence and the causal relation could reasonably be inferred." <u>Dessi v. Pennsylvania R.R.</u>, 251 F.2d 149, 151 (3rd Cir. 1958), cert. denied, 356 U.S. 967 (1958).

ii.  **Causation Under the FELA:**

A plaintiff must not only prove the employer's negligence, but that the negligence was the actual and proximate cause of plaintiff's injuries. *See* <u>Chesapeake & Ohio Ry. v. Carnahan</u>, 241 U.S. 241, 244 (1916). Although FELA is construed broadly, it does not impose strict

liability on employers. *See* <u>Robert</u>, 832 F.2d at 6. As stated by the Court in <u>Conroy v.</u>

<u>Consolidated Rail Corp.</u>, 720 F.2d 221, 223 (1st Cir. 1983), "it is black letter law that a FELA

plaintiff is not entitled to absolute security; the act, unlike Workmen's Compensation Statutes,

does not make an employer an insurer…It does not require absolute elimination of all dangers,

but only contemplates the elimination of those dangers which could be removed by reasonable

care on the part of the employer."

In this regard, statements that the plaintiff's burden of proof under the FELA is "slight"

have occasionally been misconstrued. Specifically, the holding in <u>Rogers v. Missouri Pacific</u>

<u>R.R. Co.</u>, 352, U.S. 500, 506 (1957) does not support the view that FELA liability may be

characterized "as one of slight negligence, minimal negligence, and even infinitesimal

negligence." Such view has been soundly criticized in FELA decisions in recent years. An

especially thoughtful analysis of this particular issue is provided in <u>Gautreaux v. Scurlock</u>

<u>Marine, Inc.</u>, 107 F.3d 332, 335-339 (5th Cir. 1997)(reference to work "slightest" in Rogers

decision modifies only the causation prong of statutory liability and does not modify the concept

of "negligence"; thus, duty of care owed by FELA and Jones Act employers retains usual and

familiar definition of ordinary prudence, and does not impose a higher standard of care on

defendants). <u>Chapman v. Union Pac. R.R.</u>, 467 N.W. 2d 388, 395 (Neb. 1991)("To recover under

the Federal Employers' Liability Act, an employee must prove…that the alleged negligence is a

proximate cause of the employee's injury"). In <u>Consolidated Rail Corp. v. Gottshall</u>, 512 U.S.

532 (1994), after issuing a reminder that FELA "does not make the employer the insurer of the

safety of his employees while they are on duty,"[1] the U.S. Supreme Court explained that FELA

"is founded on common-law concepts of negligence and injury." <u>Id</u>. at 543. Three years later, in

---

[1] Quoting <u>Inman v. Baltimore & Ohio R.R.</u>, 361 U.S. 138, 140 (1959) and <u>Ellis v. Union Pac. R.R.</u>, 329 U.S. 649, 653 (1947).

<u>Metro-North Commuter R.R. v. Buckley</u>, 521 U.S. 424, 429 (1997) the Court reiterated this view of FELA.[2]

> **a. The United States Supreme Court Has Established That A Railroad May Only Be Liable Under The FELA If Its Conduct Was The Proximate Cause In Whole Or In Part Of The Employee's Injury.**

Section 1 of the Federal Employers' Liability Act ("FELA") makes "[e]very common carrier by railroad ... liable in damages" for the injury or death of any employee employed in interstate commerce that "result[s] in whole or in part from the [railroad's] negligence."  45 U.S.C. § 51.  Absent an express statutory departure, the requisite elements of a FELA cause of action are determined by the common law "'as established and applied in the federal courts.'"  *Urie v. Thompson*, 337 U.S. 163, 174 (1949).

The long-established standard of causation under FELA, set forth in numerous precedents of the United States Supreme Court, is proximate cause:  the plaintiff must prove that the railroad's "negligence was the proximate cause in whole or in part" of the employee's injury.  *Tennant v. Peoria & Pekin Union Ry.*, 321 U.S. 29, 32 (1944).  Because the statute provides that a railroad may be liable if the employee's injury or death "resulted … in part from the [railroad's] negligence," 45 U.S.C. § 51, the jury may find the railroad liable even if there were other causes of the employee's injury or death.  However, the Supreme Court has emphasized that the requirement of proximate causation must still be met: the railroad's conduct must be either "the sole or a contributory proximate cause."  *Coray v. Southern Pac. Co.*, 335 U.S. 520, 523 (1949).  Accordingly,

> "to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear

---

[2] <u>Gottshall</u> and <u>Buckley</u> both established limiting rules for recovery for negligent infliction of emotional distress as being consistent with common law principles at the time of FELA's enactment.

> that the injury was the natural and probable consequence of the
> negligence or wrongful act."

*Brady v. Southern Ry.*, 320 U.S. 476, 483 (1943).  The Supreme Court has reiterated the federal

proximate cause rule under FELA in case after case.[3]

The Supreme Court further elaborated the federal proximate-cause rule in *Davis v. Wolfe*,

263 U.S. 239 (1923).  In that case, which involved a FELA claim based on the railroad's

violation of the Safety Appliance Act,[4] the Court held that "an employee cannot recover" if the

railroad's unlawful conduct "is not a proximate cause of the accident which results in his injury,

*but merely creates an incidental condition or situation in which the accident, otherwise caused,*

*results in such injury*."  *Id*. at 243 (emphasis added).  On the other hand, the employee may

recover if such conduct was "a proximate cause of the accident, resulting in injury to him while

in the discharge of his duty."  *Id.*

Notwithstanding this overwhelming precedent, some lower courts have held that the

Supreme Court *sub silentio* overruled decades of its prior causation precedents in *Rogers v.*

*Missouri Pacific Railroad*, 352 U.S. 500 (1957).  *See, e.g.*, *Oglesby v. Southern Pac. Transp.*

*Co.*, 6 F.3d 603, 607 (9th Cir. 1993) ("'proximate cause' is not required under the FELA");

*Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 606 (10th Cir. 1997) (holding that *Rogers*

---

[3] *See, e.g.*, *Lang v. New York Cent. R.R.*, 255 U.S. 455, 461 (1921) (reversing for lack of evidence of proximate cause); *St. Louis-S.F. Ry. v. Mills*, 271 U.S. 344, 347 (1926) (same); *Northwestern Pac. R.R. v. Bobo*, 290 U.S. 499, 503 (1934) (same); *see also, e.g.*, *St. Louis, Iron Mountain & S. Ry. v. McWhirter*, 229 U.S. 265, 280 (1913); *Davis v. Kennedy*, 266 U.S. 147, 148 (1924); *Minneapolis, St. Paul & Sault Ste. Marie Ry. v. Goneau*, 269 U.S. 406, 409-10 (1926); *New York Cent. R.R. v. Ambrose*, 280 U.S. 486, 489 (1930); *Swinson v. Chicago, St. Paul, Minneapolis & Omaha Ry.*, 294 U.S. 529, 531 (1935); *Brady v. Terminal R.R. Ass'n*, 303 U.S. 10, 15 (1938); *Tiller v. Atlantic Coast Line R.R.*, 318 U.S. 54, 67 (1943); *Coray*, 335 U.S. at 523 (1949); *Urie*, 337 U.S. at 195; *O'Donnell v. Elgin, Joliet & E. Ry.*, 338 U.S. 384, 390 (1949); *Carter v, Atlantic & St. Andrews Bay Ry.*, 338 U.S. 430, 434-35 (1949); *Brown v. Western Ry. of Ala.*, 338 U.S. 294, 297-98 (1949).

[4] Violations of the Boiler Inspection Act and the Safety Appliance Act are actionable under FELA even in the absence of negligence, but the same "test of causal relation" applies in those cases as in negligence cases.  *Carter,* 338 U.S. at 434; *Louisville & Nashville R.R. v. Layton*, 243 U.S. 617, 621 (1917) ("carriers are liable to employees in damages whenever the failure to obey these safety appliance laws is the proximate cause of injury to them when engaged in the discharge of duty").

"definitively abandoned" proximate causation).  These decisions cannot be followed for two reasons.  First, they are based on a patent misreading of *Rogers*.  Second, and most fundamentally, the Supreme Court has held that it has the exclusive prerogative to declare its precedents overruled, and lower courts must continue to follow those prior precedents, even if they believe them to be inconsistent with later Supreme Court decisions.  *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989).

### b.   The Supreme Court in *Rogers v. Missouri Pacific Railroad* Did Not Overrule Its Prior Precedents Establishing Proximate Cause As The FELA Standard

*Rogers* did not overrule, implicitly or explicitly, any of the numerous Supreme Court precedents establishing the federal rule of proximate cause under FELA.  Rather, *Rogers* rejected a particular common-law conception of "proximate cause" that required a showing that the railroad's wrongful act was the "sole, efficient, producing cause of injury."  352 U.S. at 506. That conception was contrary to both the plain language of FELA and prior Supreme Court Court's precedents on proximate cause.  *Rogers* made clear that in circumstances where the jury could find either the employee's or the railroad's negligence to be the proximate cause of the injury, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."  *Id.*

In *Rogers*, the employee had been burning weeds on a sloping track bed.  When a train passed, it fanned the flames of the fire he had created, and forced the employee back onto a culvert.  The employee slipped on gravel and fell off the culvert, injuring himself.  At trial, the employee adduced evidence that the railroad was negligent in requiring him to work near the tracks where passing trains could fan the flames around him, and in failing to maintain the

16

surface of the culvert; the railroad countered with evidence that the plaintiff was negligent in not watching his fire. *Id.* at 502-04. The Court expressly stated that, on the evidence presented, the jury could have found either the employee or the railroad to have been the legal cause of the injury. *Id.* at 504.

Even though the jury had found for the plaintiff, the Missouri Supreme Court had reversed the judgment, in part on the ground that the employee's "conduct was at least as probable a cause for his mishap as any negligence of the [railroad], and that in such case there was no case for the jury." *Id.* at 505. The state court had erroneously ruled that "there is no jury question in actions under this statute … unless the judge can say that the jury may exclude the idea that his injury was due to causes with which the defendant was not connected." *Id.* at 505-06. The United States Supreme Court in *Rogers* disapproved the state court's decision, which improperly invoked "language of proximate causation which makes a jury question dependent upon whether the jury may find that *the defendant's negligence was the sole, efficient, producing cause of injury*." *Id.* at 506 (emphasis added). A rule that the railroad's negligence must be "the sole, efficient, producing cause of injury" is contrary to the statutory directive that renders a railroad liable if it is a partial cause of the employee's injury. 45 U.S.C. § 51. Rather, where the evidence suggested multiple possible causes, the Supreme Court held that "[u]nder this statute the *test of a jury case* is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." 352 U.S. at 506 & n.11 (emphasis added). If that test is met, "a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities." *Id.* at 507.

*Rogers* cannot be read to overrule the *federal* proximate cause standard that the Court had established in its prior FELA cases. *See Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 120 n.8 (1963) (invoking *Rogers* to uphold a jury verdict of proximate causation, and applying the "substantial factor" test of the *Restatement (Second) of Torts* § 435 (1965)). Indeed, *Rogers* was not creating new law at all; it simply restated settled law under FELA for cases involving multiple causation. See, *e.g.*, *Hines v. Sweeney*, 201 P. 165, 170 (Wyo. 1921) ("Under this act the railroad company is liable, if its negligence contributes proximately to the injury, no matter how slightly, and no matter how great may be the negligence of the employee."); *New York, Chi. & St. Louis R.R. v. Niebel*, 214 F. 952, 955 (6th Cir. 1914) (a railroad "is liable, if through other employees it is guilty of any causative negligence no matter how slight in comparison to that of plaintiff"); *Atlantic Coast Line R.R. v. McIntosh*, 198 So. 92, 96 (Fla. 1940) (Brown, J., dissenting in part and expressing the opinion of the court with regard to this issue). See *Marazzato v. Burlington N. R.R.*, 817 P.2d 672, 674 (Mont. 1991) ("the *Rogers* case was addressing the issues of multiple causes and contributory negligence after it had been established that the employer was negligent").

Not only did *Rogers* never question the Supreme Court's prior precedents, but it explicitly derived its test of a jury case from prior FELA decisions that confirmed the longstanding federal proximate cause rule. For example, *Coray*, *cited in Rogers*, 352 U.S. at 506 n.11, held (as noted above) that the railroad's negligence must be either "the sole or a contributory proximate cause" of the employee's injury. 335 U.S. at 523. Similarly, *Carter v. Atlanta & St. Andrews Bay Railway*, *cited in Rogers*, 352 U.S. at 507 n.13 held that the railroad can only be held liable if "the jury determines that the defendant's breach is 'a contributory proximate cause' of injury." 338 U.S. 430, 435 (1949). In short, *Rogers* did not abrogate

18

proximate cause as the standard the jury was to apply; rather, it simply established the "test of a jury case" when there was evidence of multiple possible causes of injury.[5]

### c.   This Court Must Follow Supreme Court Precedents On Point Regardless Of Any Perceived Inconsistency With Later Precedent.

Even if this Court were to interpret *Rogers* differently, it must still apply the federal proximate cause rule established in prior Supreme Court precedents.  The Supreme Court has declared emphatically that the lower courts may not deviate from its precedents on point, regardless of the perceived effect of later decisions:  "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."  *Rodriguez de Quijas*, 490 U.S. at 484; *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("it is this Court's prerogative alone to overrule one of its precedents").

### ii.   <u>Payment of Medical Expenses:</u>

The Plaintiff is not entitled to recover damages for medical expenses covered by the plaintiff's insurance policy, the premiums for which were paid by the railroad.  <u>Rogers v. Chicago & Northwestern Transportation Co.,</u> 375 N.E.2d 952 (1978); <u>Nelson v. Pennsylvania Central Railroad Co.,</u> 415 F.Supp. 225 (1976).  The plaintiff may not recover for medical expenses paid pursuant to the plaintiff's insurance policy covered by the railroad, but may

---

[5] The Supreme Court has stated in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994) that FELA employs a "relaxed standard" of causation, *id.* at 543, and in *Crane v. Cedar Rapids & Iowa City Railway*, 395 U.S. 164 (1969), that a FELA plaintiff "is not required to prove common-law proximate causation," *id.* at 166.  Those statements are true; *Rogers* rejected the older common law conception of "proximate causation which makes a jury question dependent upon whether the jury may find that the defendant's negligence was the sole, efficient, producing cause of injury."  *Rogers*, 352 U.S. at 506.  *Rogers* did not, however, overrule or cast doubt on the longstanding proximate cause rule established in the Court's FELA precedents.

introduce evidence concerning the amount of medical bills or expenses; defendant railroad may thereafter introduce evidence regarding the expenses that have been paid. Brice v. National Railroad Passenger Corporation, 664 F.Supp. 20 (1987). Some courts have held that a plaintiff cannot recover medical expenses paid by the railroad's health insurance and, therefore, the amounts of medical bills and expenses bare little, if any, relevance to the plaintiff's claim and were properly excluded from evidence. Varhol v. National Railroad Passenger Corp., 909 F.2d 1557 (7th Cir. 1990). 45 U.S.C. §55 provides that a railroad may set off in a FELA suit "any sum it has contributed and paid to any insurance, relief benefit or indemnity that may have been paid to the injured employee on account of the injury or death for which said action was brought."

### iii.    Payment of Wage Continuation Benefits:

A railroad defendant is entitled to an offset for sums paid for medical treatment and for salary continuation under a long term disability plan. Anglim v. Missouri Pacific R.R. Co., 832 S.W.2d 298 (Mo. Banc 1992).

### iv.    Prejudgment Interest:

Prejudgment interest is not permitted in a FELA action for injuries. Morgan v. Monessen Southwestern Ry. Co., 108 S. Ct. 1837 (1988).

### v.    Proper Measure of Damages:

Net wage loss is the proper measure of damages. Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523 (1983); Norfolk & Western Ry. Co. v. Liepelt, 444 U.S. 490 (1980); Cazad v. Chesapeake & Ohio Ry. Co., 404 N.E.2d 320 (Ill. App. 1980). Only after tax, or "net"

income, is the proper measure of damages. <u>Norfolk & Western Ry. Co. v. Liepelt</u>, *supra*. Not only must federal income tax be deducted from any future wage loss calculation, but social security tax or railroad retirement tax must also be deducted, along with any state income tax. <u>Pickel v. International Oilfield Divers, Inc.</u>, 791 F.2d 1237 (5th Cir. 1986); <u>Matador v. Ingram Tank Ships, Inc.</u>, 732 F.2d 475 (5th Cir. 1985). Plaintiff is required to deduct from his gross earnings not only taxes, but also the business costs and expenses he will not incur as a result of his alleged injuries. These costs and expenses include union dues, transportation expenses, and special work clothing or safety equipment. <u>Jones & Laughlin Steel Corp. v. Pfeifer</u>, 732 F.2d 475 (5th Cir. 1985).

> **vi.    <u>Future Pain and Suffering</u>:**

The FELA requires a reduction of future pain and suffering to present value. <u>St. Louis S.W. Ry. Co. v. Dickerson</u>, 470 U.S. 409 (1985).

## VII.    <u>AMENDMENTS TO THE PLEADINGS</u>

None.

## VIII.    <u>ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION</u>

None.

## IX.    <u>PROBABLE LENGTH OF TRIAL BY JURY</u>

Ten days, this case is to be tried before a jury.

## X.    <u>WITNESS LIST</u>:

### A.    Plaintiff

1.    Paul Papadakis, Plaintiff
54 Carmel Lane
Feeding Hills, MA

Mr. Papadakis will testify concerning issues of liability causation and damages.

2.     Kathleen Papadakis
       54 Carmel Lane
       Feeding Hills, MA

       Mrs. Papadakis will testify concerning issues of damages.

3.     Richard G. Ross
       15 Tina Lane
       Westfield, MA

       Mr. Ross is a former CSX supervisor who is expected to testify concerning Plaintiff's report of the incident and past accident, and inspection of the vehicle.

4.     James Cronin, C.O., CSX, Potential
       Westfield, MA

5.     Barbara Dunbar, RN, Potential
       C.O. CSX
       Selkirk, NY
       CSX medical management nurse who may be called on issue of damages.

6      Rebecca Savoie, C.O., CSX, Potential
       Charlotte, NC

       Ms. Savoie is a CSX Claims Representative who is expected to testify concerning a post-accident interview with the Plaintiff.

7.     Peter Ebert
       435 Newry St.
       Greenville, NY

       Mr. Ebert is expected to testify concerning the post-accident inspection of the vehicle by TNT Repairs.

8.     Ronald Jette
       13 Northwest Road
       Spencer, MA
       A CSX employee, Mr. Jette is expected to testify concerning the condition of the subject vehicle.

9.    James Santillo
      Feeding Hills, MA

      A work equipment mechanic who inspected the subject vehicle, Mr.
      Santillo is expected to testify concerning the condition of the subject
      vehicle.

10.   James Lamb
      Westfield, MA

      A work equipment mechanic who inspected the subject vehicle, Mr. Lamb
      is expected to testify concerning the condition of the subject vehicle.

11.   Richard Spatafore, Potential
      CSX, Supervisor
      Albany, NY

12.   David J. Evers
      CSX Division Engineer
      41 Longwood Drive
      Clifton Park, NY

      Mr. Evers is expected to testify concerning hyrail operation and use of
      correct hand lever.

13.   Richard L. Sanderson
      55 Linsley St.
      Branford, CT

      Mr. Sanderson is expected to testify concerning mechanical operation
      maintenance inspection and repair of Fairmount hyrail equipment and
      cause of the mechanical problem the Plaintiff experienced on June 13,
      2001.

14.   Franklyn H. Carrington, MD
      Expert, Fact Witness
      Internal Medicine, PC
      377 Walnut Street
      Agawam, MA

      Dr. Carrington is the Plaintiff's primary care physician who treated the
      Plaintiff both before and following the incident.

15.    Jeff Crother, C.O., CSX
       Fact Witness

       Mr. Crother is expected to testify concerning Fairmount hyrail equipment
       and condition of vehicle.

16.    John Richard, C.O., CSX
       Fact Witness

       Mr. Richard is expected to testify concerning Fairmount hyrail equipment
       and condition of vehicle.
       413-568-2966

17.    Everett Cooley, C.O., CSX
       Fact Witness

       Mr. Cooley is expected to testify concerning Fairmount hyrail equipment
       and condition of vehicle.

18.    David Caron, C.O., CSX, Potential
       CSX Safety Committee Member

19.    Anthony Riccardi
       Expert
       292 Washington Ave., Ext.
       Albany, NY

       Mr. Riccardi is an economist who has evaluated the extent and nature of
       the Plaintiff's financial damages.

20.    Leona Liberty, Ph.D.
       120 Defreest Drive
       Troy, NY

       Expert Dr. Liberty is the Plaintiff's consulting vocational rehabilitation
       evaluation.

21.    Lawrence H. Field, MD
       780 Chestnut Street
       Springfield, MA
       Expert

       Dr. Field is Plaintiff's treating physiatrist.

22.    R. Scott Cowan, MD
Northeast Orthopedic Surgeons
300 Carew Street
Springfield, MA
Expert

Dr. Cowan is Plaintiff's treating orthopedic surgeon.

23.    Paul B. Markarian, MD
Bay State MRI & Imaging Center
3300 Main Street
Springfield, MA
Expert

Dr. Markarian is Plaintiff's radiologist.

24.    Brad Winter or other representative of the BMWE
Danvers, MA
Fact witness.

Mr. Winter is expected to testify concerning the collective bargaining
agreement between CSX and BMWE.


**B.    Defendant**

    **a.    Anticipated Witnesses to be Called:**

1.    The plaintiff, Paul T. Papadakis, 54 Carmel Lane, Feeding Hills, MA;

2.    Kathleen Papadakis, 54 Carmel Lane, Feeding Hills, MA; The purpose of her
testimony is to establish the lack of the plaintiff's limitations, pain and activities;

3.    Scott Marshall, c/o CSX, 500 Water Street, Jacksonville, FL; (904) 366-5483; He
is the vocational rehabilitation contact for injured CSX employees.  He will
establish the efforts made by CSX to rehabilitate the plaintiff;

4.    Barbara Dunbar, R.N., c/o CSX, Rd. 2 Box 145, One Bell Crossing Rd, Selkirk,
NY; 12158; The purpose of her testimony will be to establish the communication
between the plaintiff and CSX regarding his injuries, treatment and rehabilitation;

25

5.     Pete Ebert, c/o TNT Repairs, Inc., 435 Newry Street, Greenville, NY; (518) 584-1300; The purpose will be to testify as a witness to the post-accident inspection of the vehicle, as well as maintenance and repairs for the vehicle in question and the post accident inspection of the hi-rail device;

6.     Ernest Gailor; Harlan-McGee, 4000 Silver Beach Rd, Malta, NY (518) 584-1300; Defendant expects to testify about plaintiffs lack of liability, and to establish that the incident could not have occurred as the plaintiff as described, that the device was properly maintained and was functioning as intended at the time of the plaintiffs accident;

7.     James Lamb; c/o CSX, Westfield, MA; whose purpose is to testify regarding repairs, maintenance and inspection to hy-rail vehicles;

8.     Ronald Jette; c/o CSX, 13 Northwest Rd, Spencer, MA; his purpose is to testify as to the condition and operation of the hi-rail vehicle in question;

9.     James Santillo; c/o CSX, Feeding Hills, MA; his purpose is to testify regarding the hi-rail vehicle maintenance, repairs and inspection;

10.     Dick Spatafore, c/o CSX, Albany, NY; testify about the condition of the hi-rail vehicle and CSX policies and procedures regarding I&R foreman and the operation and maintenance of hi-rail devices;

11.     Dave Evers; c/o CSX, 41 Longwood Drive, Clifton Park, NY; as Division Engineer and Chief Regional Engineer, his purpose will be to testify about the hi-rail vehicles, including inspections, problems, and/or maintenance;

12.     John McMahon, c/o CSX; His purpose is to provide information about the hi-rail vehicle in question, and the equipment the plaintiff had in his vehicle at the time of the accident;

13.     Everett Cooley, c/o CSX; his purpose is to testify as to the condition and operation of the hi-rail vehicle in question;

14.     Richard G. Ross, 15 Tina Lane, Westfield, MA; whose purpose is to establish condition of the hi-rail device, and post accident inspections of the hi-rail device;

15.     Plaintiff's treating physicians, nurses, therapists, medical treatment providers, and other medical professionals regarding the injuries, medical treatment and the nature and extent of any disabilities which were allegedly caused by the accident which is the subject of the plaintiff's *Complaint*, including but not limited to:

        a.     Franklyn Carrington, M.D., 377 Walnut St. Ext., P.O. Box 788, Agawam, MA;

       b.   Lawrence H. Field, M.D., 780 Chestnut Street, Springfield, MA;

       c.   Representatives of Baystate MRI and Imaging Center, 3300 Main Street, P.O. Box 1289, Springfield, MA;

       d.   Bernard A. Pfeifer, another representative of M.D., Lahey Clinic, 41 Mall Road, Burlington, MA;

       e.   R. Scott Cowan, M.D.,  and/or representatives of N.E. Orthopedic Surgeons, 300 Carew Street, Springfield, MA;

       f.   Paul B. Markarian, M.D., Baystate MRI and Imaging Center, 3300 Main Street, P.O. Box 1289, Springfield, MA;

       g.   Shan Li, M.D., Baystate MRI and Imaging Center, 3300 Main Street, P.O. Box 1289, Springfield, MA;

       h.   David Mernoff, M.D., and/or other Representatives of Mercy Hospital, 299 Carew Street, Springfield, MA;

16.    Kevin Krause, TNT Repairs, S. Bethlehem, NY; His purpose will be to testify as to the repairs and maintenance performed on the hy-rail vehicle in question;

17.    Lou Frangella, One Bell Crossing, Rd 2, Box 145, Selkirk, NY 12158; his purpose is to testify about the condition of the hi-rail vehicle and CSX policies and procedures regarding I&R foreman and the operation and maintenance of hi-rail devices; and the post accident inspection;

18.    Dr. Edward Feldmann; 110 Lockwood Street, Ste 324, Providence, RI, 02093; The substance of his anticipated testimony is set forth in the Defendant's Expert disclosure which is incorporated herein by this reference, a copy of which is attached hereto as Exhibit "A.";

19.    Joseph Kent; 1229 Johnson Ferry Rd, Suite 103C, Marrietta, GA 30068-2778; The substance of his anticipated testimony is set forth in the Defendant's Expert disclosure which is incorporated herein by this reference, a copy of which is attached hereto as Exhibit "B."

d.  Potential Witnesses

20.    Plaintiff's treating physicians, nurses, therapists, medical treatment providers, and other medical professionals regarding any and all pre-existing conditions or injuries, including but not limited to:

a.  Thomas S. Kaye, M.D., and/or other representatives of Valley Neurological Surgery, P.C., 300 Stafford Street, Springfield, MA;

b.  Representatives of the Lahey Clinic, 41 Mall Road, Burlington, MA;

c.  Representatives of Valley Neurological Surgery, P.C., 300 Stafford Street, Springfield, MA;

d.  Anthony Rizzo, M.D., One Stafford Street, Springfield, MA;

e.  Representatives of Baystate Medical Center, Springfield, MA;

f.  J. Hector Pope, M.D., c/o Baystate Medical Center, Springfield, MA;

g.  J. Gordon Rich, M.D., Springfield, MA;

h.  Representatives of Orthopedic Associates of Springfield, Inc., 401 Chestnut Street, Springfield, MA;

i.  David Mase, c/o Work Connection, 575 Beech Street, Holyoke, MA;

j.  Representatives of MVA Center for Rehabilitation, 300 Stafford Street, Springfield, MA; and

k.  Desmond Ebanks, M.D., 83 Wooster Hights Road, Danbury, CT.

21.    Raymond Fecteau, 408 Atlantic Avenue, Rm 441, Boston, MA 02208, (617) 223-8550; David McCann, Robert Duda, and/or Claudia Walsh, 844 North Rush Street, Chicago, IL 60611, or other Representatives of the Railroad Retirement Board; whose purpose, if needed is to testify about the plaintiffs receipt of disability benefits;

22.    Representatives of TNT Repairs, Inc., S. Bethlehem, NY; relating to the inspection, maintenance and/or repair of the hy-rail vehicles;

23.    Thomas Cook, M.D., c/o CSX;  for purposes of establishing communication between the plaintiff and CSX regarding his accident, injuries, and/or rehabilitation;

24. Michelle Combs, Lysha Hillstrom, Pansy Blancett and/or other representatives of Unum Provident, One Fountain Square, Chattanooga, TN, 37402; the plaintiff's benefit provider;

25. Roy Squires, c/o CSX; testify about the condition of the hi-rail vehicle and CSX policies and procedures regarding I&R foreman and the operation and maintenance of hi-rail devices;

26. Thomas Neilson, M.D., c/o CSX, 500 Water Street, J290, Jacksonville, FL 32202-0586 (904) 359-1500; for purposes of establishing communication between the plaintiff and CSX regarding his accident, injuries, and/or rehabilitation;

27. Daniel Eckles, c/o CSX, Selkirk, NY;

28. Kevin O'Toole, c/o CSX, 84 Milton Street, Dorchester, MA 02124; (617) 288-6031;

29. Rusty Hayner, c/o CSX;

30. Dave Caron, c/o CSX; One Bell Crossing, Rd 2, Box 145, Selkirk, NY 12158, (518) 371-1600;

31. Rebecca Savoie, c/o CSX, 112 South Ramsey Street, Charlotte, NC, 28216, (704) 401-3150;

32. Bob McGovern, c/o CSX, Readville, MA;

33. Jim Decker, c/o CSX;

34. Ed Tubbs, c/o CSX;

35. Michael Bossone, c/o CSX;

36. Tammi Hill, c/o CSX;

37. Jim Cronin, c/o CSX, 151 Day Street, West Springfield, MA, 01089 (413) 785-4300;

38. Daniel Russo or other representatives of Aegis International, P.O. Box 821, Windsor, CT 06095, (860)688-9466; for impeachment of the plaintiff including but not unlimited to plaintiffs limitations on ]physical activity

39. Representatives from Harsco Corporation, 2401 Edmond Street, P.O. Box 20, Cayce-West Columbia, SC 29171-0020; for the purpose of providing information on their hy-rail equipment.

The defendant reserves the right to: call the plaintiff's treating physicians, all expert witnesses identified by the plaintiff, expert rebuttal witnesses; to supplement and/or amend its expert witness list prior to trial; and to further identify expert witnesses once plaintiff fully and completely identifies his expert witnesses.

## XI.    PROPOSED EXHIBITS:

**A.    Agreed to Exhibits:**

1.    Employee's Incident Report (Form PI-1A), dated June 15, 2001;

2.    CSX safety rules;

3.    TNT Repair, Inc. invoice number 07473, dated 6/14/01, regarding subject vehicle;

4.    Fairmount Railway Motors Operators Service and Parts manual, revised 12/90, marked Exh. 3 at plaintiff's deposition;

5.    Fairmount Railway Motors Operators Service and Parts manual, marked as Exh. 3 at Richard Sanderson's deposition;

6.    Fairmount Railway Motors Operators Service and Parts manual, revised 5/93, marked as Exh. 1  at Peter Ebert's deposition;

7.    Hy-rail bar, marked as Exh. 2 at plaintiff's deposition 5/16/05;

8.    Hy-rail double bend bar;

9.    TNT Repair, Inc., maintenance and repair book, including but not limited to the notation of Kevin Krouse concerning hy-rail vehicle no.: 500285;

10.    Various photographs of the subject vehicle taken by Joe E. Kent.

11.    Transcript of plaintiff's recorded statement taken 6/21/01 by Becky Savoie, CSX;

12.    Recording of plaintiff's recorded statement taken 6/21/01 by Becky Savoie, CSX;

13.     Various photographs of the subject vehicle taken by Ernest Gailor during his inspection;

14.     Medical records of Franklyn Carrington, MD, Internal Medicine, PC, 377 Walnut Street Extension, Agawam, MA;

15.     Medical records of Thomas Kaye, MD, Valley Neurological Surgery, PC., 300 Stafford Street, Springfield, MA;

16.     Medical records of Pain Management Center, 3400 Main Street, Springfield, MA;

17.     Medical records of R. Scott Cowan, MD, Orthopedic Surgeons, 300 Bernie Avenue, Springfield, MA;

18.     Medical records, Lahey Clinic, Bernard Pheifer, MD, 41 Mall Road, Burlington, MA;

19.     Medical records, Springfield Anesthesia Services, Inc.;

20.     Medical records, Baystate MRI Imaging Center, 3300 Main Street, Springfield, MA;

21.     Medical records, Paul Markarian, MD, Baystate MRI & Imaging Center, 3300 Main Street, Springfield, MA;

22.     Medical records, Mercy Medical Center;

23.     VHS video tape by Harsco Track Technologies, "Operation Instructions for Light Duty Hy-Rail Guidewheel Equipment", Tape # V1-093. Released April 2001;


B.     **Plaintiff's List of Exhibits:**

1.     Personal injury/occupational illness report dated June 15, 2001;

2.     Employee incident/injury root cause analysis report;

3.     Memo from D.J. Evers, marked at Evers deposition as Exhibit 4;

4.     CSX Transportation safety rules and company policies and programs for the transportation department, dated October 1, 2001;

5.     Paul Papadakis federal income tax returns for the tax period 1997-2001;

6.     Brotherhood of Maintenance and Way fringe benefit statement;

7.      Worklife tables promulgated by the United States Department of Labor;

8.      Life expectancy tables promulgated by the United States Department of Health;

9.      CSX medical department health records regarding Paul Papadakis;

10.     Harsco Track Technology service bulletin, No. 05012;

11.     Three Fairmount Hy-Rail operating bars of the type depicted in the Fairmount Operators Manual;

12.     TNT Repair, Inc., notebook notation of Kevin Krouse concerning hy-rail vehicle no.: 500285;

13.     Medical records of Lawrence H. Field, MD, Physical Medicine Rehabilitation, 780 Chestnut Street, Springfield, MA;


**C.    Defendant's List of Exhibits**

     **a.    <u>Those which the Defendant Expects to Offer:</u>**

1.      Photograph taken of safety instructions printed in the hy-rail vehicle;

2.      Photos taken 2/15/05 by plaintiff;

3.      Photos taken 9/24/04 by defendant;

4.      Photos taken by Michael B. Flynn 9/24/04;

5.      CSX document, "Safe Way, Engineering and Mechanical Departments;"

6.      CSX Safety Rules;

7.      The plaintiff's receipt of Safety Rules form;

8.      CSX Fleet management system repair history printout;

9.      The hy-rail truck the plaintiff was using at the time of his accident;

10.     Diagram marked as Exhibit 4 at Richard Sanderson's deposition;

11.     Letter from Attorney Byrne  to Ernest Gailor dated 5/27/04, marked Exhibit 6 at Mr. Gailor's deposition;

12.   Memorandum to the Papadakis file dated 6/21/05, marked Exhibit 9 at Mr. Gailor's deposition;

13.   Disability Claim forms prepared by the plaintiff and/or his physicians, including but not limited to Dr. Field or Dr. Carrington;

14.   Article, "A Knife in the Back" by Dr. Groopman, from *The New Yorker*, 4/8/02;

15.   Unum Provident records regarding benefits paid;

16.   Correspondence between Unum Provident and the plaintiff;

17.   Unum Provident Supplemental Sickness Plan booklet R05000, believed to be in the possession of the plaintiff;

18.   Health insurance special notice form;

19.   Dr. Carrington's complete records, including but not limited to:

    i.   Office note dated 8/11/77;
    ii.   Internal medicine document dated 6/27/01, marked Exhibit 2C at Dr. Carrington's deposition;
    iii.   Office note dated 8/15/78;
    iv.   Office note dated 8/30/01;
    v.   Internal medicine document dated 6/15/01, marked as exhibit 2A at Dr. Carrington's deposition;

20.   Dr. Field's complete records, including but not limited to:

    i.   Letter to Dr. Carrington from Dr. Field dated 8/9/01;
    ii.   Letter from Dr. Field to Dr. Carrington, dated 6/28/01;
    iii.   Letter to Attorney Byrne from Dr. Field dated 9/22/03, copy marked exhibit 7 at Dr. Field's deposition;
    iv.   History File Records, marked exhibit 8 at Dr. Field's deposition;
    v.   Letter dated 3/10/05 to Attorney Byrne, marked exhibit 9 at Dr. Field's Deposition;
    vi.   Original signature page for 3/10/05 letter to Attorney Byrne from Dr. Field marked exhibit 11 at Dr. Field's deposition;
    vii.   Dr. Field's Intake Sheet dated 6/28/01, marked exhibit 12 at Dr. Field's deposition;
    viii.   Workmen's Compensation Questionnaire dated 6/28/01, marked exhibit 13 at Dr. Field's deposition;

21.    Letter from Attorney Byrne to Dr. Field dated 3/11/05, marked exhibit 10 at Dr. Field's Deposition;

22.    Letter from Attorney Byrne to Dr. Field dated 2/7/05;

23.    Letter from Attorney Byrne to Dr. Field dated 3/24/05;

24.    General claims payroll extract;

25.    Railroad Retirement Board sickness benefit statements;

26.    Railroad Retirement Board Form AA-1d *Application for Determination of Disability*;

27.    Job description from CSX;

28.    Pamphlet from CSX Vocational rehabilitation;

29.    Video from CSX Vocational rehabilitation;

30.    Vocational rehabilitation questionnaire, 12/14/01;

31.    Letter from Scott Marshall to plaintiff dated 12/9/05;

32.    Letter from Thomas Neilson to Attorney Naumes dated 12/19/03;

33.    Letter from Dr. Pheifer to plaintiff dated 5/15/02;

34.    Letter from Thomas Neilson to Attorney Naumes dated 10/13/03;

35.    Letter from Attorney Naumes to Thomas Cook dated 10/1/03;

36.    Letter from Thomas Cook to Attorney Naumes dated 9/25/03;

37.    Letter from Attorney Naumes to Thomas Cook dated 9/23/03;

38.    Letter from Thomas Cook to Attorney Naumes dated 7/17/03;

39.    Letter from Thomas Cook to Attorney Naumes dated 7/13/03;

40.    Letter from Thomas Cook to plaintiff dated 5/22/03;

41.    Letter from Thomas Cook to plaintiff dated 3/20/03;

42.    Letter from Thomas Cook to plaintiff dated 1/7/03;

43.     Letter from Thomas Cook to plaintiff dated 2/23/02;

44.     Letter from Attorney Naumes to Thomas Cook dated 12/18/02;

45.     Letter from Thomas Cook to plaintiff dated 11/7/02;

46.     Letter from Thomas Cook to plaintiff dated 8/27/02;

47.     Letter from Thomas Cook to plaintiff dated 4/18/02;

48.     Letter from Barbara Dunbar to Dr. Pheifer dated 3/7/02;

49.     Letter from Thomas Cook to plaintiff dated 1/21/02;

50.     Letter from Thomas Cook to plaintiff dated 11/20/01;

51.     Letter from Attorney Naumes to Rebecca Savoie dated 8/10/01;

52.     Letter from Scott Cowan, M.D. to Dr. Field dated 11/16/01;

53.     Letter from Barbara Dunbar to Dr. Cowan dated 9/27/01;

54.     Letter from Barbara Dunbar to Dr. Thomas Kaye dated 8/1/01;

55.     Letter from Thomas Cook to plaintiff dated 6/19/01;

56.     Letter from Barbara Dunbar to Dr. Field dated 6/27/01;

57.     Letter from Barbara Dunbar to Dr. Carrington dated 6/17/01;

58.     Letter from Barbara Dunbar to Plaintiff dated 6/17/01;

59.     Defendant reserves the right to introduce records from the Plaintiff's treating physicians, nurses, therapists, medical treatment providers, and other medical professionals regarding his treatment for injuries allegedly suffered as the incident which is the subject of his complaint, as well as any and all pre-existing conditions or injuries, including but not limited to:

   a.  Records from Baystate MRI and Imaging Center, 3300 Main Street, P.O. Box 1289, Springfield, MA, including but not limited to:
       i.  MRI report dated 7/7/01;
       ii. MRI report dated 4/23/02;

    b.   Records from New England Orthopedic Surgeons, 300 Carew Street, Springfield, MA, including but not limited to the office note dated 11/6/01, marked as exhibit 10 at the plaintiff's deposition;

    c.   Records of Mercy Hospital, 299 Carew Street, Springfield, MA, including but not limited to:
         i.   X-ray report dated 615/01;
         ii.   Emergency Room report dated 12/10/93;

    d.   Records from Valley Neurological Surgery, P.C., 300 Stafford Street, Springfield, MA, including but not limited to the record dated 8/28/01.

### b.   **Those which the Defendant May Offer if the Need Arises:**

60.    Department of Labor Dictionary of Occupational Titles;

61.    Ernest Gailor's report dated 8/24/05, marked as Exhibit 11 at his deposition;

62.    Ernest Gailor's report dated 8/24/05, marked as Exhibit 12 (second version) at his deposition;

63.    Ernest Gailor's report dated 8/24/05, marked as Exhibit 13 (third version) at his deposition;

64.    Ernest Gailor's memorandum, marked as Exhibit 10 at Mr. Gailor's deposition;

65.    Plaintiff's federal and state income tax returns from 1997 to present, some which are in the possession of the plaintiff and have not yet been produced;

66.    The plaintiff's W-2's from 1997 to the present, none of which have been produced;

67.    The hy-rail assembly itself and/or a mock-up of same;

68.    Letter from the RRB to the plaintiff dated 11/22/02;

69.    RRB letter to plaintiff dated 6/13/02;

70.    RRB records of recent payments;

71.    Provident Life disability claim documents;

72.    Records from Anthony Rizzo, M.D., One Stafford Street, Springfield, MA;

73.    Records from J. Gordon Rich, M.D., Springfield, MA;

74.     Records from  Orthopedic Associates of Springfield, Inc., 401 Chestnut Street, Springfield, MA;

75.     Records from David Mase, c/o Work Connection, 575 Beech Street, Holyoke, MA;

76.     Records from MVA Center for Rehabilitation, 300 Stafford Street, Springfield, MA; and

77.     Records from Desmond Ebanks, M.D., 83 Wooster Hights Road, Danbury, CT;

78.     Records from Orthopedic Surgeons, 300 Bernie Avenue, Springfield, MA;

79.     Records from Springfield Anesthesia services, Inc.


        CSX reserves the right to use any of the documents, data compilations and tangible things identified and/or produced by the plaintiff and incorporates herein by this reference the documents, data compilations and tangible things set forth in the plaintiff's disclosures.  CSX also reserves the right to supplement its list of documents, data compilations and tangible things prior to trial.

        Plaintiff has indicated an intention to object to the following Exhibit Numbers: 6, 7, 9-18, 20 viii, 21-23, 25-26, 28-59, 61-64, 67-73, 75-77.

        Defendant objects to the following Exhibit numbers:  1, 2, 3, 5, 6, 7, and 10.


## XII.    PROPOSED JURY INSTRUCTIONS, SPECIAL VERDICT FORM OR SPECIAL INTERROGATORIES

        To be filed under separate cover.

Respectfully submitted,

The Plaintiff,                                    The Defendant,

PAUL T. PAPADAKIS,                    CSX TRANSPORTATION, INC.,
By his attorney,                            By its attorneys,


/s/ Robert M. Byrne                        /s/ Valerie A. Murphy
Robert M. Byrne, Jr., Esq., BBO# 068620    Michael B. Flynn, Esq., BBO# 559023
THORNTON & NAUMES              Valerie A. Murphy, Esq., BBO# 661460
100 Summer Street, 30th Floor        FLYNN & ASSOCIATES, P.C.
Boston, MA 02110                        400 Crown Colony Drive, Suite 200
(617) 720-1333                            Quincy, MA 02169
                                                  (617) 773-5500


Dated:  April 17, 2006